### GILLESPIE v. WALKER, Sheriff.

(Circuit Court of Appeals, Fourth Circuit.  February 6, 1924.)

No. 2168.

1. **Habeas corpus ⬤⇒113(1)—That wrong method of review was sought held insufficient to deny relief.**

That a review of a habeas corpus proceeding was sought by a writ of error, instead of by an appeal, the proper method, *held* of insufficient moment to deny relief, where otherwise it should be granted, in view of Act Sept. 6, 1916.

2. **Criminal law ⬤⇒977(3)—Postponing sentencing within District Court's discretion.**

Postponing the sentencing of one pleading guilty to a charge of violating the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), to the next term of court *held* within District Court's discretion, if what was done was otherwise free from objection.

3. **Criminal law ⬤⇒977(3), 1001—District Courts' powers as to extension of rendition of judgments and execution of sentences.**

While the District Courts are without power to extend the rendition of their judgments and the execution of their sentences with the view of paroling or pardoning accused, they may do so where it becomes incidentally necessary in the administration of justice.

4. **Criminal law ⬤⇒977(3)—After rendition of judgment on first count court cannot render judgment on second count.**

The District Court, after the rendition of its judgment under the first count of the information, has no power to render a second judgment at a later term against the accused under the second count of the same indictment, notwithstanding that a continuance was had to a later date with the view of considering the action to be taken under the second count.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; George W. McClintic, Judge.

Habeas corpus by G. T. Gillespie against Henry A. Walker, Sheriff of Kanawha County, W. Va. A discharge of petitioner was refused, and he brings error. Reversed and remanded, with directions to discharge petitioner.

J. Raymond Gordon, of Charleston, W. Va. (P. H. Camp, of Charleston, W. Va., on the brief), for plaintiff in error.

B. J. Pettigrew, Asst. U. S. Atty., of Charleston, W. Va. (Elliott Northcott, U. S. Atty., of Huntington, W. Va., on the brief), for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WADDILL, Circuit Judge. This is a habeas corpus proceeding in which plaintiff in error avers that he is unlawfully restrained of his liberty by the defendant in error, acting pursuant to a judgment of the District Court of the United States for the Southern District of West Virginia at Charleston, and prays that he may be discharged by this court. The case presented on the pleadings is briefly as follows:

Plaintiff in error was proceeded against by information containing two counts; the first charging the unlawful possession of intoxicating

liquors, the quantity and kind of which was unknown to the prosecuting attorney, and the second count with maintaining a nuisance in that he owned, controlled, occupied, and used a certain room, house, building, and structure where intoxicating liquors were manufactured, kept, bartered, and sold. Both offenses were charged to be in violation of the National Prohibition Law (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.). On the 22d of November, 1922, the record shows that the defendant appeared and pleaded guilty to the charge, and thereupon the court rendered judgment as to count No. 1, and fined defendant the sum of $50, without costs, and directed that he be remanded to the custody of the marshal until the fine was paid. The record further recites that the court, not being advised of its judgment as to count No. 2 of said information, took time to consider thereof until the first day of the next term of the court. On the 14th of June, 1923, the court's order of that date shows that the defendant appeared in proper person in answer to his plea of guilty of November 22, 1922, and that the court rendered its judgment under count No. 2 of the information that the defendant should be confined and imprisoned in the jail of Kanawha county for a period of 10 months, and the defendant was thereupon remanded to the custody of the marshal.

The theory on which the discharge is asked is that on the entry of judgment, on the plea of guilty under the first count, on the 22d of November, 1922, the court exhausted its power and authority in the premises, save to carry out and enforce its then judgment, and was without authority to enter further judgment, or to control the execution thereof under the second count of the information, or to parol defendant in connection therewith; that the subsequent action of the court on the 14th of June following was wholly void; that the court had lost jurisdiction of defendant by reason of what had been done under the first count, in the rendition of its judgment against the defendant thereunder, and which had been duly carried out, and defendant released and discharged therefrom.

The case was heard upon the pleadings—that is, the petition, exhibits filed therewith, the demurrer thereto, the return of the respondent thereto, and the demurrer and motion to quash the same, from which it appears that the information, containing two counts, was regularly filed; that the defendant appeared and pleaded guilty to both counts, and the court entered its judgment under the first count of the information, and continued the case under the second count to the next term, and during a day of the latter term, being advised in the premises, entered judgment upon the second count, committing the defendant to jail for the period of 10 months.

Upon the record as thus adduced and assignments of error, three questions are presented for the consideration of the court: Whether the case should not have been brought to this court by appeal, instead of writ of error; whether the court was authorized upon entering judgment under the first count to continue the case until the next term; and at that time to enter judgment upon the second count.

[1] First. It may be conceded that the correct method of reviewing the action of the District Court in habeas corpus proceedings in this

court is by appeal, and not writ of error. Act March 3, 1891 (Court of Appeals Act [26 Stat. 826]); Encyclopedia United States Supreme Court Reports, vol. 1, p. 381; Fisher v. Baker, 203 U. S. 174, 27 Sup. Ct. 135, 51 L. Ed. 142. While the case should have been brought to this court by appeal, we do not deem that of sufficient moment in this important class of cases to deny relief where otherwise it should be granted. Act Cong. Sept. 6, 1916, 39 Stat. p. 726.

[2, 3] Second. Considering the right of the court to postpone action in rendering its judgment to the then next term of the court, it may be said that, if what was done was otherwise free from objection, it was in the discretion of the court to thus postpone the rendition of its judgment to the next term.' Federal courts, as compared with what had been the invariable custom since the establishment of the present judicial system, have been greatly restricted in their action on the subject of suspending sentences, and postponing the rendition of their judgments, by the decision of the Supreme Court of the United States in the comparatively recent case of Ex parte United States, Petitioner, 242 U. S. 27, 37 Sup. Ct. 72, 61 L. Ed. 129, Ann. Cas. 1917B, 355, familiarly known as the "Killitts Case." Since this decision of the Supreme Court the Circuit Court of Appeals for the Third Circuit in Miner v. United States, 244 Fed. 422, 157 C. C. A. 48, 3 A. L. R. 995, has fully and intelligently considered what may be done on the subject in the light of the Killitts decision with the result that, while the District Courts are without power to extend the rendition of their judgments and the execution of their sentences with a view of paroling or pardoning an accused, they may nevertheless do so where it becomes incidentally necessary in the administration of justice. In that case the Circuit Court of Appeals reviewed the action of the District Court, postponing its judgment until the third term of the court after conviction, a continuance having been regularly made, and the accused bailed for his appearance at each term. While it is manifest that the time in which judgments should be kept open, since the Killitts decision, should be cut short, still we do feel that, in the light of that decision, the ends of justice would be promoted, and not obstructed, by the authorization of the postponement of execution of sentences, and the rendition of judgments, where the District Court feels advised so to do, for a period during the term at which the case is tried, or to a fixed day, or days, during the then next term of the court. Under this view the action of the lower court in postponing the case to another term was free from objection.

[4] Third. This brings us to the more important question presented, viz. The right of the trial court, after the rendition of its judgment under the first count of the information, to render a second judgment against the accused. This is a most interesting question, of far-reaching importance, and arises constantly in the administration of justice, and is one as to the propriety and validity of which this court must pass in this proceeding, as it is only by virtue of what was done in rendering a judgment on the second count that complaint is made, and that the petitioner is imprisoned. The practice of joining many different offenses, generally of similar character, under separate

counts, in the same indictment, or information, universally prevails, and has become almost necessary to the administration of justice, the detection of crime, and the orderly and reasonably inexpensive method in criminal procedure. Each count is treated as charging a separate offense, and the jury may convict or acquit on the whole information or indictment, or on any count, and, upon a general verdict of guilty, judgment may be rendered upon all the counts, or under any single count. The court is in this way given the largest possible discretion in carrying out the verdict, but the question here presented is whether the case may be combined, so to speak, as a common cause, until the verdict is rendered, or the plea of guilty made, and then divided and split up thereafter, for the purpose of imposing sentence, into as many cases as there are counts in the information or indictment. We are convinced, after a most careful consideration, especially in the light of the practice to combine many offenses under a single indictment of several counts, that the ends of justice require that the judgment when entered shall be as a single judgment—that is, entered at one time, covering and carrying out the jury's verdict—and that to allow the entry of judgment under some phases of the case at one time, and some other phases at another time, as presented by the different counts, would operate necessarily to the prejudice of an accused, possibly in effect placing him in jeopardy for the same offense more than once, and leave in indefinite suspense, the enforcement and carrying out of the law, which would be alike undesirable from a governmental standpoint, and wholly unfair to an accused. The better authorities fully sustain this view. In Ex parte Lange, 18 Wall. 173, 21 L. Ed. 872, upon a state of facts not precisely like those here, the Supreme Court, speaking through Mr. Justice Miller, says:

"For of what avail is the constitutional protection against more than one trial, if there can be any number of sentences pronounced on the same verdict? Why is it that, having once been tried and found guilty, he can never be tried again for that offense? Manifestly it is not the danger or jeopardy of being a second time found guilty. It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution. But if, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal, he can be again sentenced on that conviction to another and different punishment, or to endure the same punishment a second time, is the constitutional restriction of any value? Is not its intent and its spirit in such a case as much violated as if a new trial had been had, and on a second conviction a second punishment inflicted? The argument seems to us irresistible, and we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it."

In People v. Felker, 61 Mich. 110, 27 N. W. 869, the court said:

"The proceedings in this case cannot be sanctioned. A judgment in a criminal case cannot be divided up and parceled out, and pronounced from time to time, by the court. The court may, in the exercise of a reasonable discretion, suspend sentence for a reasonable time to enable the court to inform itself of such matters as will enable it to impose a just and proper sentence, or to enable the respondent to present exceptions to a higher court, or sue out a writ of error, but the sentence or judgment when pronounced must embrace the whole measure of the punishment imposed. The judgment last pronounced in this case is not a correction or alteration of the determination of the court when it pronounced the first judgment. It is a further judg-

ment, which the court then announced its intention of pronouncing. There is neither law nor precedent for such course as was pursued in this case, and the judgment given must be reversed, and the respondent discharged."

In Edgerton v. Commonwealth, 5 Allen (Mass.) 514, the Supreme Judicial Court of Massachusetts said:

"But it is well settled that several distinct offenses, committed at different times, may be alleged and charged in as many different counts in the indictment, if they are of the same degree and are subject to the same kind of penalty or punishment, the whole of which for each offense may be imposed in one sentence awarded upon a judgment rendered upon a general conviction of the accused of all the offenses which are thus alleged and charged against him. 1 Chit. Crim. Law, 253; Archb. Crim. Pl. 60. Upon such an indictment the same plea of not guilty raises an issue upon each and every one of the several counts, and the defendant may thereupon be convicted upon one, or more than one, or upon all, of them. But there can be only one judgment upon the indictment, and this must be strictly and exclusively upon the particular count or counts upon which the defendant has been found guilty. It is a necessary consequence from this principle that a judgment rendered and sentence awarded in pursuance thereof definitely and conclusively disposes of the whole indictment."

And the same court, in a subsequent decision, speaking through its President (later Mr. Justice Gray of the Supreme Court of the United States) and referring to the last-named decision, says:

"In Edgerton v. Commonwealth, this court was of opinion that there could be only one judgment upon the indictment, and that consequently a judgment and sentence upon one count definitely and conclusively disposed of the whole indictment, and operated as an acquittal upon, or discontinuance of, the other count. And the same view has been affirmed by decisions in other states. Guenther v. People, 24 N. Y. 100; Girts v. Commonwealth, 22 Pa. St. 351; Weinzorpflin v. State, 7 Blackf. 186; Stoltz v. People, 4 Scam. 168; State v. Hill, 30 Wis. 416; Kirk v. Commonwealth, 9 Leigh, 627; Nabors v. State, 6 Ala. 200; Morris v. State, 8 Sm. & Marsh. 762. We have no doubt that this is the true view, and that the same principle applies to a case in which a verdict of guilty is returned upon all the counts, and sentence is passed upon some of them—especially where, as in the present case, all the counts are against the same person, and no special order is made at the term at which the judgment is rendered, continuing the case for further proceedings." Commonwealth v. Foster, 122 Mass. 322, 323 (23 Am. Rep. 326).

The following authorities will also be found to be of interest: State v. Addy, 43 N. J. Law, 113, 39 Am. Rep. 547; Brown v. Rice, 57 Me. 55, 2 Am. Rep. 11; Tuttle v. Long, 100 Me. 123, 60 Atl. 892; State v. Hockett, 129 Mo. App. 639, 108 S. W. 599; In re Beck, 63 Kan. 61, 64 Pac. 971; In re Webb, 89 Wis. 354, 62 N. W. 177, 27 L. R. A. 356, 46 Am. St. Rep. 846.

We have given much thought to the suggestion that, because of the entry of the judgment under the first count, a continuance was had to a later date, with a view of considering the action to be taken under the second count, that a different rule should prevail, and our conclusion is that this should make no difference in determining the legal effect of the judgment under the first count, and that to admit such a qualification would be destructive of the whole theory upon which the validity and effect of the first judgment and sentence is based, as it would be only too easy to make the simple postponement of subsequent or other sentences, and as many thereof as there appeared to be counts in the indictment or information.

In what has been said we have not overlooked a decision of the Circuit Court of Appeals of the Eighth Circuit in the case of Kreuzer v. United States, 245 Fed. 34, 165 C. C. A. 444.

The judgment of the lower court will be reversed, and the cause remanded thereto, with directions to grant the prayer of the petitioner for habeas corpus, and discharge the petitioner.

Reversed.